301 S.E.2d 815

**STATE of West Virginia**

v.

**Alberta TONEY.**

**No. 15617.**

Supreme Court of Appeals of West Virginia.

March 30, 1983.

Micheal L. Harper, Asst. Atty. Gen., Charleston, for appellee.

Eric H. O'Briant, Valentine, Wilson & Partain, Logan, for appellant.

PER CURIAM:

Alberta Toney was convicted by a jury in the Circuit Court of Logan County of delivery of a controlled substance. She appeals the September 29, 1981 judgment of the circuit court, which denied her motion for a new trial, sentenced her to 1–5 years in the penitentiary, and fined her $5,000. We conclude that the trial court improperly restricted the *voir dire* of the jury panel, and reverse.

The appellant was charged with selling Methaqualone to an undercover police officer, Trooper D.E. Difalco, in the bathroom of the Brotherhood Club, a local bar. This was only one of a series of drug transactions by Difalco during the night in question. Approximately one month before the appellant's trial, and during the same term of court, Marvin Toppings was convicted of delivery of L.S.D. upon Difalco's testimony. During the Toppings trial, Difalco also testified about the transaction with appellant,[1] as well as other drug purchases that evening from various individuals.

Twenty-nine prospective jurors were called for appellant's trial.[2] Of those, one was excused for cause because he was the father of a state policeman. After twenty were seated in the jury box, defense counsel made a motion in chambers to strike for cause any members of the panel who had served on the Toppings jury, noting that Difalco had testified during that trial about the purchase for which appellant was now being tried.

Defense counsel stated that he believed nine of the twenty had served on the Toppings jury. The judge replied that if he sustained the motion, it would necessitate bringing in the Clerk to call for additional jurors to be brought to court. Therefore, he said, he would reserve his ruling until the conclusion of *voir dire*. Defense counsel then requested that the judge poll the jury individually on that issue, so as to remove any possible prejudice of the remaining jurors. The judge replied that he would take that into consideration also.

Upon questioning by the court, nine of the prospective jurors said that they had served on the Toppings jury. The judge then recessed the trial, and told those nine to retire to the jury room and discuss whether or not that would influence their decision in this case.[3] When they returned

---

1. Difalco's testimony regarding this transaction consisted of the following exchange, during cross-examination by defense counsel:

   "Q  You say you went to the Brotherhood Club?
   "A  Yes, sir.
   "Q  Did you make any purchases there?
   "A  Yes, sir.
   "Q  Who did you purchase from there?
   "A  I bought four qualudes off Alberta Toney. I believe it was four. Two or four ...."

2. Although the jury list contained 43 names, only 29 jurors appeared on the day of appellant's trial, for one reason or another. Therefore, only 29 jurors were available from which to draw the panel in this case.

3. The court made the following statement to the jurors:

   "Now, I want you to really do some serious soul searching, ladies and gentlemen, because

to the courtroom, each juror responded that it would "absolutely not" influence him in any degree whatsoever. The judge then questioned the remaining eight jurors in the courtroom, and learned that one of them had also served on the Toppings jury.

In chambers, defense counsel said he would have preferred that the court poll the jurors individually in chambers, and renewed his motion to strike them for cause. The judge overruled the motion, stating that he believed the jurors' statements under oath that they would not be influenced. The record shows that seven of the nine challenged jurors served at appellant's trial. The other two were excused after the parties exercised their peremptory strikes.[4]

The appellant contends that the trial court abused his discretion and committed reversible error in denying individual *voir dire* after nine jurors admitted to serving on the Toppings jury, in allowing those nine to retire and deliberate to determine whether that would influence their verdict, and in refusing to strike those jurors for cause.

The State replies that the two cases were unrelated, and that because Difalco mentioned appellant's name only once during her Toppings testimony, the appellant has shown no prejudice from the court's refusal to strike these jurors. The State contends that the trial judge's ruling complied with our prior decisions, particularly *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956), in which we held, in syllabus point 3:

"When it appears that a juror in a subsequent criminal case can fairly and impartially act and render a just verdict upon the evidence adduced at the trial, he is not disqualified to serve as such in the subsequent case merely by reason of his service as a juror or his presence as a spectator at a prior trial of a different defendant charged with a different but similar offense, although the evidence is similar and the witnesses in behalf of the prosecution are the same in each case."

The facts of *Carduff, supra,* are strikingly similar to those of the instant case. The defendant in that case was charged with selling liquor without a license to two undercover state policemen during an evening in which the officers also purchased illegal liquor at six other establishments. Eight of the twenty prospective jurors called in Carduff's trial had also served as jurors in two earlier trials in the same term of court, in which two other defendants were convicted of illegal liquor sales during the same investigation. At each of those trials the officers testified that Carduff made the sale charged against him in the indictment. The court overruled his challenge for cause of those jurors, and this Court affirmed.

We agree, however, with the appellant's contention that these two cases may be distinguished from one another. In *Carduff,* the court conducted a detailed *voir dire* examination of the members of the panel, during which each member indicated that he had not formed an opinion concerning the guilt or innocence of the defendant and could render a fair and impartial verdict upon the evidence. This Court said that absent any showing that the jury was

---

in this Court and in your conscience and in your heart and my conscience and in my heart I want a jury absolutely free from any touch of bias or prejudice or prejudging or anything other than what's the honest to goodness justice that comes out of this court. I'm concerned that that case might influence you in some degree in this case and it shouldn't, but I don't know whether you can completely separate that case from this case or not. I'm going to ask you to do some real honest soul searching. In fact, I'm going to take a recess for a couple of minutes and ask you to go back to your jury room and discuss it among the nine, if you would let that influence you in the slightest degree and I mean the very

slightest degree because if it would, in all honesty ladies and gentlemen you should not sit on this case.

"So, will you retire to your jury room and do some real soul searching and come back and tell me whether or not it would influence you to any degree whatsoever.

"You may be excused."

4. The foreman of appellant's jury was John T. Hinchman. The appellant states that Hinchman was also the foreman of the Toppings jury. Although Hinchman did serve on the Toppings jury, we have no record that he was the foreman. We note, however, that the State does not deny it.

not an impartial one, it would not disturb the trial court's exercise of its discretion.

In the instant case, the trial court did not go into any detail in its examination of the members of the panel; in fact, we might fairly characterize its *voir dire* as perfunctory. The court asked a few general questions regarding the jurors' qualifications and their possible relationship to the appellant, witnesses or attorneys. They were then asked if they had heard anything about the facts of the case that had caused them to form an opinion regarding the guilt or innocence of the appellant, and if there was any other reason they felt they should not sit on this case. These questions were addressed to the panel as a whole, and elicited no response.

The trial court did not question any of the jurors individually, until the nine jurors returned from their discussion in the jury room. The court then asked a spokesman for the group:

"Sir, would that possibly, in any degree whatsoever, influence you or might it possibly influence you in this case?"

JUROR: "Absolutely not, sir."

THE COURT: "You are absolutely positive?"

JUROR: "Absolutely, sir."

The record then states that "the remaining eight were asked the same question and all gave the same answers."

Under the above-quoted syllabus point from *Carduff*, a juror is not disqualified to serve in a subsequent case *merely* because he previously served in a trial involving similar evidence and the same witnesses. Thus, we do not believe that the trial court in the case before us committed reversible error in failing to strike the challenged jurors for that reason alone. However, the court should have permitted counsel to question those jurors individually to determine to what extent, if any, their previous exposure to Difalco's testimony might have prejudiced them.

■ A criminal defendant is entitled to a meaningful and effective *voir dire* of the jury panel, in order to protect his fundamental constitutional right to a trial by an impartial, objective jury. *E.g., State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981). We have repeatedly held that:

"Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse." Syl. pt. 4, *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981), *quoting,* syl. pt. 3, *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978).

*See also* syl. pt. 3, *State v. Peacher, supra.*

■ We recognize that the trial court, in the exercise of its discretion, determines the method and scope of *voir dire.* However:

"It is an abuse of discretion and reversible error for a trial judge, in the exercise of his discretionary control over the scope of inquiry during *voir dire,* to so limit the questioning of potential jurors as to infringe upon a litigant's ability to determine whether the jurors are free from interest, bias or prejudice, or to effectively hinder the exercise of peremptory challenges." Syl. pt. 5, *State v. Peacher, supra.*

We are of the opinion that the nine jurors in this case indicated possible prejudice when they disclosed that they had served on the Toppings jury, particularly since the precise transaction for which appellant was being tried was mentioned during that trial. The procedure used by the trial court, excusing those jurors to discuss the prejudice problem among themselves, did not adequately protect the appellant's right to a meaningful and effective *voir dire,* was not sufficient to reveal any bias or prejudice on the part of individuals in that group, and was entirely improper.

■ We hold, therefore, that the trial court abused his discretion and committed reversible error by denying appellant's request to question those jurors individually, out of the presence of the others, to determine whether they were prejudiced to any degree. We find no merit in the appel-

lant's remaining assignments of error,[5] and are reversing on this ground alone. Because of the trial court's unreasonable restriction of *voir dire*, the appellant is entitled to a new trial.

Accordingly, the judgment of the Circuit Court of Logan County is reversed, and the case is remanded for a new trial.

Reversed and remanded.

---

**5.** The appellant also complains that the trial court erred in permitting the State to introduce evidence of another crime [an alleged offer by appellant to sell Difalco marijuana as well]; failing to direct a verdict of acquittal; refusing to give two of appellant's instructions; and overruling objections to closing remarks by the prosecutor regarding the truthfulness of a State's witness.