355 S.E.2d 47

**STATE of West Virginia**

**v.**

**Lyle FINLEY, II.**

**No. 17009.**

Supreme Court of Appeals of West Virginia.

March 12, 1987.

Charles Brown, Atty. Gen., Gayle Fiddler, Asst. Atty. Gen., Charleston, for appellee.

Leo Catsonis, Charleston, for appellant.

McHUGH, Justice:

This case is before this Court upon the appeal of Lyle Finley. It arises from an order entered on August 7, 1985, by the

Circuit Court of Ritchie County, in which the appellant was sentenced to an indeterminate period of not less than one nor more than five years in the state penitentiary and fined $5000 for the manufacture of marihuana in violation of *W.Va.Code,* 60A–4–401(a)(ii) [1983]. This Court has before it the petition for appeal, all matters of record and briefs.

In this appeal, Finley asserts that the trial court committed two errors which are: (1) that the trial court erred in denying the defendant's motion for mistrial[1] on the ground that the jurors had been prejudiced by mention of collateral crimes during *voir dire;* and (2) that the trial court erred when it considered the perceived perjury of the defendant, who testified in his own behalf, when denying a motion to reduce his sentence or place him on probation.

I

The first issue before us is whether the trial court erred in its disposition of the defense counsel's motion regarding prejudicial information being conveyed to the prospective jurors.

During the *voir dire,* in response to the court's inquiries regarding the jurors' acquaintance with the defendant, prospective juror John Bumgardner responded that he had "known [the defendant] ever since he was knee-high to a grasshopper, under a different name." Subsequently, in response to questioning, prospective juror Rosalie Wilson stated that she "was on the jury three years ago ... when [the defendant] was being tried ... on a different indictment." Both of these jurors were struck for cause, but their comments regarding the defendant were made in the presence of all prospective jurors. Defense counsel moved for a mistrial contending that the statements made by John Bum-

gardner and Rosalie Wilson prejudiced all of the jurors against the defendant. The trial court denied this motion.

■ The purpose of *voir dire* is to obtain a panel of jurors free from bias or prejudice. *State v. Harshbarger,* 170 W.Va. 401, 403, 294 S.E.2d 254, 256 (1982); *State v. Peacher,* 167 W.Va. 540, 552, 280 S.E.2d 559, 569 (1981). " 'The true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had.' " Syl. pt. 1, *State v. Harshbarger, supra,* quoting *State v. Charlot,* 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974).

Whether the remarks of the prospective jurors constitute character evidence or evidence of collateral crimes, *infra,* the remaining prospective jurors may have been prejudiced by the responses.[2]

■ The rationale for the general rule relating to the inadmissibility of collateral crimes is that when a person is placed on trial for a particular crime, he is to be convicted, if at all, on evidence showing his guilt of the specific offense charged in the indictment against him. *State v. Thomas,* 157 W.Va. 640, 654, 203 S.E.2d 445, 455 (1974). The purpose of the rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other crimes, and to preclude the inference that because he had committed other crimes previously, he was more liable to commit the crime for which he is presently being indicted and tried. *Id.; State v. Harris,* 166 W.Va. 72, 76, 272 S.E.2d 471, 474 (1980).

Two recent decisions of the Georgia Court of Appeals support the principle that the defendant had a right to be tried before a jury which had no knowledge of his in-

---

1. A motion for individual *voir dire* of each of the prospective jurors to ascertain whether the remaining prospective jurors were free of bias or prejudice would have been more appropriate.

2. The responses made by the two prospective jurors may have been in the nature of character evidence rather than evidence of collateral crimes. Ms. Wilson revealed that the defendant

had been tried once before on a different indictment. There was no discussion as to whether the defendant had actually committed or been convicted of the charges contained in the previous indictment. *See W.Va.R.Evid.* 404(a)–(b); *see also* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.2(D) at 311 (2d ed. 1986).

dictment on other charges not at issue in the case at bar. *Thrash v. State,* 158 Ga. App. 94, 283 S.E.2d 611 (1981); *Newby v. State,* 161 Ga.App. 805, 288 S.E.2d 889 (1982). In *Thrash,* although the facts were more egregious because a juror with knowledge of a prior indictment remained on the case, the Court, in reversing the trial court's denial of a mistrial, appropriately stated:

> " 'While "an indictment is a mere charge or accusation by a grand jury and is no evidence of guilt" ..., *the fact that a defendant is also under indictment for one or more other crimes than the one for which he is on trial would tend to impress upon the jury that he is more likely to be guilty in the case under consideration and thus to effectively deprive him of the right to enter upon his trial with the presumption of innocence in his favor.'* ... 'It is also axiomatic that the defendant in any criminal case—indeed, all parties in all cases—are entitled to a fair trial, and that the injection into the case of any matter not properly before the jury and which may influence the outcome of the case one way or another is error.' "

158 Ga.App. at 95, 283 S.E.2d at 612. (citations omitted) (emphasis added).

In the case before us, the trial court's elicitation from prospective juror Wilson that she had served on a jury which tried the defendant on a different indictment constituted damaging information against the defendant. It is probable that Ms. Wilson's remarks impressed upon members of the jury that the defendant was more likely to be guilty in the case being readied for trial because he had been indicted for another offense at another time. When coupled with the comments of Mr. Bumgardner concerning his acquaintance with the defendant under another name, the error may have been even greater.

■ The process to select jurors should endeavor to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice. *State v. West,* 157 W.Va. 209, 219, 200 S.E.2d 859,

865–66 (1973); *State v. Siers,* 103 W.Va. 30, 33, 136 S.E. 503, 504 (1927).

It is well established in this State that "[j]urors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse." Syl., *State v. Deaner,* 175 W.Va. 489, 334 S.E.2d 627 (1985); *Accord,* syl. pt. 5, *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983); syl. pt. 2, *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983); syl. pt. 1, *State v. Toney,* 171 W.Va. 725, 301 S.E.2d 815 (1983); syl. pt. 3, *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978). *Cf. State v. Lassiter,* 177 W.Va. 499, 354 S.E.2d 595 (1987).

■ We have further held that a prospective juror need not affirmatively indicate bias or prejudice in order to require the trial court or counsel to conduct a more extensive examination on *voir dire.* We have recognized that

> [i]t may frequently become necessary for the trial court or counsel to go into particular matters which may be the subject of biased or prejudiced views in order to determine whether the juror in fact, even without his own knowledge, may have a demonstrable bias or prejudice which would operate to the disadvantage of one of the litigating parties.

*State v. Ashcraft, supra,* 172 W.Va. at 649, 309 S.E.2d at 609, *quoting State v. Pendry,* 159 W.Va. 738, 747, 227 S.E.2d 210, 217 (1976), *overruled, in part, on other grounds, Jones v. Warden, West Virginia Penintentiary,* 161 W.Va. 168, 241 S.E.2d 914, *cert. denied,* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978).

In this regard, the American Bar Association's *Standards for Criminal Justice* instruct us, in pertinent part:

> If there is a substantial possibility that individual jurors will be ^ineligible to serve because of *exposure* to potentially prejudicial material, the examination of each juror with respect to exposure shall take place outside the presence of other chosen and prospective jurors....

American Bar Association *Standards for Criminal Justice* § 8–3.5(a) (2d ed. 1982) (emphasis added).[3]

■ Because of the limited record before us, we have no way of knowing the effect the responses of Ms. Wilson and Mr. Bumgardner regarding the defendant had upon the other jurors. The trial court should have conducted or allowed an individual *voir dire* to ascertain the impartiality of each remaining prospective juror.

■ This Court has consistently recognized that meaningful and effective *voir dire* of the jury is necessary to effectuate the fundamental right to a fair trial by an impartial and objective jury. *See, e.g., State v. Schrader*, 172 W.Va. 1, 3, 302 S.E.2d 70, 72 (1982); *State v. Helmick*, 169 W.Va. 94, 96–97, 286 S.E.2d 245, 247 (1982); *State v. Peacher*, 167 W.Va. 540, 552, 280 S.E.2d 559, 569 (1981). Accordingly, any reasonable doubt regarding impartiality of the jurors must be resolved in favor of the accused. *Barker v. Commonwealth*, 230 Va. 370, 374, 337 S.E.2d 729, 733 (1985). Under the circumstances of this case, we are compelled to conclude that the remarks were prejudicial. *See Commonwealth v. Eccles*, 214 Va. 20, 22–23, 197 S.E.2d 332, 333 (1973). Thus, the trial court erred in failing to conduct or allow an individual *voir dire* of the jury.

■ When a trial court determines that prospective jurors have been exposed to information which may be prejudicial, the trial court, upon its own motion or motion of counsel, shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice.

## II

Even though the case will be reversed on the previous issue, another issue before us may recur in the event of a retrial and conviction.

The second issue before us is whether it is proper for a sentencing judge, when fixing the defendant's sentence, to consider what the trial judge perceived to be false testimony by the defendant during the trial. In the case before us, the defendant took the stand in his own defense. He testified that on the date the prosecution's witness observed him tending marihuana plants, he was at home watching a television program. He stated that he knew nothing about the marihuana plants.

The jury found the defendant guilty of the manufacture of marihuana. After the trial judge had sentenced the defendant to the state penitentiary for a period of one to five years, the defendant filed a motion to reduce his sentence or place him on probation. The motion was denied. The trial judge emphasized that the defendant had twice testified in court contrary to the jury's findings. He believed that the defendant had perjured himself on two occasions.

In *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Supreme Court of the United States faced the question of whether a trial judge may consider, for sentencing purposes, his belief that the defendant deliberately lied on the stand. The Court first examined the permissible scope of a trial court's examination and evaluation of a defendant's character and conduct for purposes of determining his potential for rehabilitation. The Court concluded that perceived perjury was a permissible consideration in determining that potential and quoted with approval the observation made by the Second Circuit Court of Appeals in *United States*

**3.** This standard indicates that where the jurors are exposed to potentially prejudicial information, the trial court should conduct or allow an individual *voir dire* to ascertain the effects of that exposure. Similarly, during the course of a trial, if the potentially prejudicial information disseminated goes beyond the record on which the case will be submitted to the jury and raises serious questions of possible prejudice, the court may, on its own motion, or shall, on the motion of a party, question or permit the questioning of each juror, out of the presence of the others, about exposure to that material. American Bar Association *Standards for Criminal Justice,* § 8–3.6(f) (2d ed. 1982).

*v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir. 1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975):

" 'The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the new law is not a cheerful datum for the prognosis a sentencing judge undertakes.... Impressions about the individual being sentenced—the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of individualized sentencing.... [A] fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the indicia.' "

*United States v. Grayson,* 438 U.S. at 51, 98 S.Ct. at 2616, 57 L.Ed.2d at 590.

█ In *Grayson,* the Court also ruled that judicial consideration of the defendant's conduct during trial does not impermissibly chill his constitutional right to testify in his own behalf, because the right guaranteed is to testify truthfully, rather than the right to perjure oneself. We agree.

Almost without exception, courts have permitted the trial judge to consider a defendant's perjury during trial to influence

the judge's assessment of the defendant's potential for rehabilitation. *Grayson, supra; United States v. Harris,* 761 F.2d 394, 403–04 (7th Cir.1985); *United States v. Bangert,* 645 F.2d 1297, 1308–09 (8th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981); [4] *In re Perez,* 84 Cal.App.3d 168, 171–73, 148 Cal.Rptr. 302, 304–05 (1978); *State v. Huey,* 199 Conn. 121, 131, 505 A.2d 1242, 1247 (1986); *State v. May,* 227 Kan. 393, 399, 607 P.2d 72, 77 (1980); *State v. Plante,* 417 A.2d 991, 995–96 (Me.1980); *State v. Thompson,* 310 N.C. 209, 222, 311 S.E.2d 866, 873–74 (1984); *State v. Stewart,* 70 Ohio App.2d 147, 149–50, 435 N.E.2d 426, 428–29 (1980); *State v. Bertoldi,* 495 A.2d 247, 253–54 (R.I.1985); *State v. Poe,* 614 S.W.2d 403, 404 (Tenn.Crim.App.1981); *see also Atkins v. State,* 40 Md.App. 461, 466, 391 A.2d 868, 871 (1978).[5]

█ "The defendant's truthfulness, or lack thereof, while testifying on his own behalf, is probative of his attitudes toward society and his prospects for rehabilitation." Syl. pt. 2, *State v. Stewart, supra.* Accordingly, a sentencing judge, in evaluating a defendant's potential for rehabilitation and in determining the defendant's sentence, may consider the defendant's false testimony observed during the trial.

█ In so holding, we must stress that courts have consistently rejected any notion that a defendant may receive a greater sentence as *punishment* for his perjury. *See United States v. Hendrix,* 505 F.2d 1233 (2d Cir.1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975); *United States v. Moore,* 484 F.2d 1284 (4th Cir.1973). While it is permissible to consid-

---

**4.** Prior to the *Grayson* case, a majority of the United States Courts of Appeals held that a sentencing judge may consider the defendant's alleged perjury while testifying in imposing sentence for a substantive crime. *See United States v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir.1974) *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975); *United States v. Moore,* 484 F.2d 1284, 1287 (4th Cir.1973); *United States v. Nunn,* 525 F.2d 958, 960–61 (5th Cir.1976); *United States v. Wallace,* 418 F.2d 876 (6th Cir.1969) *cert. denied,* 397 U.S. 955, 90 S.Ct. 987, 25

L.Ed.2d 140 (1970); *United States v. Cluchette,* 465 F.2d 749, 754 (9th Cir.1972); *Humes v. United States,* 186 F.2d 875, 878 (10th Cir.1951).

**5.** For a case holding that a defendant's perceived lack of veracity while testifying may not enter into the judge's process of determining the severity of a sentence for the substantive crime, see *Commonwealth v. Coleman,* 390 Mass. 797, 461 N.E.2d 157 (1984).

er a defendant's perjury within the scope of evaluating his character for rehabilitation potential, enhancement of a defendant's sentence as punishment for the substantive offense of perjury for which he has not been indicted, tried and convicted would be improper. *State v. Thompson*, 310 N.C. 209, 218, 311 S.E.2d 866, 871 (1984). As long as the sentence is not increased to punish the perjury itself and the perceived perjury is being treated as a factor to be weighed in the sentencing process, enhancement of the defendant's sentence is permissible.

■ In this case, the trial judge properly considered what he believed was false testimony by the defendant, among other factors, in denying his motions for reconsideration of sentence or granting probation. The defendant at no time asserted an inability to recollect the events leading up to his arrest. The trial judge had the opportunity to carefully evaluate the defendant's testimony and demeanor on the witness stand. It was within the trial judge's authority to determine whether the defendant's testimony contained willful and material falsehoods and if so, to assess, in light of all the other knowledge gained about the defendant, the meaning of that conduct with respect to his potential for rehabilitation. *United States v. Grayson*, 438 U.S. at 55, 98 S.Ct. at 2618, 57 L.Ed.2d at 592.

For the reasons set forth in section I of this opinion, we reverse the judgment of conviction in this case and remand this case to the Circuit Court of Ritchie County for further proceedings consistent with this opinion.

Reversed and remanded.