509 S.E.2d 557

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Daniel William GOFF, Defendant Below, Appellant.**

No. 25009.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1998.

Decided Sept. 25, 1998.

Concurring Opinion of Justice Workman Dec. 15, 1998.

Dissenting Opinion of Justice Starcher Dec. 18, 1998.

Workman, J., filed concurring opinion.

Starcher, J., filed dissenting opinion.

Darrell V. McGraw, Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for the State of West Virginia.

Vito Mussomeli, Jefferson County Public Defender, Martinsburg, West Virginia, Attorney for Appellant.

PER CURIAM:

This criminal appeal was filed by the defendant, Daniel William Goff (hereinafter Goff), from an order of the Circuit Court of Jefferson County denying his motion for reconsideration of the court's sentencing order. Goff was sentenced to 15 to 35 years in the penitentiary after a jury conviction for sexual assault in the first degree. The motion for reconsideration of sentence requested the placement of Goff, as a youthful offender, at the Anthony Center. Upon a review of the parties' arguments and the record, we affirm the circuit court.

1. At the time of the incident Goff was 18 years old.

2. Consistent with our prior practice, we identify the infant by initials due to the sensitive nature of this case. *See In re Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989). At the time of the incident A.A. was 11 years old.

I.

FACTUAL BACKGROUND

On March 6, 1996, Goff [1] met the victim in this case, A.A.,[2] while playing basketball at a junior high school in Jefferson County. After being told they had to leave the area, Goff and A.A. agreed to go to a nearby elementary school playground to continue playing basketball. Goff asked A.A. to ride with him in his car to the elementary school. A.A. refused. A.A. indicated that he would walk to the school. Goff drove his car to the school. He parked his car in the yard of a nearby residence. Goff and A.A. played basketball for a brief period. They then sat down on a bench to talk. No one other than Goff and A.A. were in the area at the time.

After a brief conversation A.A. stated he was going home. Goff attempted to trip A.A. as he was leaving. A.A. did not fall. Goff then grabbed A.A. and dragged him to a grassy area near the basketball court. Goff forced A.A. to the ground and pulled down A.A.'s pants. A.A. pleaded with Goff to release him. Goff responded "shut up or else I will kill you." Goff took off a sock and placed it in A.A.'s mouth to silence him. Goff then began performing oral sex on A.A.[3] Goff released A.A., and the child ran. A.A. knocked on the door of several homes in the area and eventually found a couple at home. The couple contacted A.A.'s mother by phone, and subsequently drove him home.

Shortly after A.A. was taken home, Trooper D.D. Forman arrived at A.A.'s home in response to a 911 call that a child had been sexually assaulted. Trooper Forman obtained a statement from A.A., which included Goff's first name, a description of him, as well as a description of his car. Trooper Forman investigated the crime scene and found the white sock that had been stuffed in A.A.'s mouth by Goff. Further investigation

3. A.A. testified: "He put his tongue on my penis and I felt his teeth touching.... He licked it twice. I kept begging him to let me go.... He licked it again and let me go."

led Trooper Forman to Goff's home.[4] Goff voluntarily accompanied Trooper Forman to the state police detachment, and Goff gave Trooper Forman a statement admitting to the sexual assault of A.A.[5] Subsequently, Goff was indicted for committing the offense of sexual assault in the first degree.[6]

Goff's trial occurred on March 13, 1997. The State called two witnesses, A.A. and Trooper Forman. Goff testified. He was the only witness called by the defense. Goff denied having any type of sexual contact with A.A. Goff argued that his confession to Trooper Forman was false and was a product of law enforcement intimidation. The jury returned a verdict finding Goff guilty of sexual assault in the first degree.

4. The owner of the residence near the elementary school, where Goff had earlier parked his car, contacted the police complaining about the vehicle parked at the residence. The resident gave police the license plate number and description of the car. The police matched the description of the car given by the resident with A.A.'s description of the car driven by Goff. Using the license plate number, the police were able to obtain Goff's address.

5. Goff was informed of his *Miranda* rights, which he waived, prior to being questioned.

6. The statute Goff was indicted under was W.Va. Code § 61–8B–3 (1991), which reads:

   *(a) A person is guilty of sexual assault in the first degree when:*
   *(1) Such person engages in sexual intercourse or sexual intrusion with another person and, in so doing:*
   (i) Inflicts serious bodily injury upon anyone; or
   (ii) Employs a deadly weapon in the commission of the act; or
   *(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.*
   (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than fifteen nor more than thirty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than fifteen nor more than thirty-five years.
   (Italics added).

7. Goff also filed a petition for appeal of his conviction. His petition was denied by this Court on November 14, 1997.

Goff was sentenced on May 5, 1997. At the sentencing hearing, Goff chose to exercise his right of allocution. Goff spoke at length denying he was guilty of any offense against A.A. In sentencing Goff to 15 to 35 years of imprisonment, the trial court stated:

   I'm rejecting any motion of probation. I'm further rejecting any other matters concerning a lesser sentence or referral to the youthful offenders facility.... You, sir, will not admit the crime you have been convicted of. Therefore there is no rehabilitation.

On August 4, 1997, Goff filed a motion for reconsideration of the sentence.[7] The motion requested the trial court suspend the sentence of imprisonment and commit Goff to the Anthony Center for youth offenders.[8]

8. The youth offender treatment sought by Goff is governed by W.Va.Code § 25–4–6 (1975), which provides:

   *The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions to be assigned to a center. The period of confinement in the center shall be for a period of six months, or longer if it is deemed advisable by the center superintendent, but in any event such period of confinement shall not exceed two years.* If, in the opinion of the superintendent, such male offender proves to be an unfit person to remain in such a center, he shall be returned to the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted. In his discretion, the judge may allow the defendant credit on his sentence for time he has spent in the center.
   When, in the opinion of the superintendent, any boy has satisfactorily completed the center training program, such male offender shall be returned to the jurisdiction of the court which originally committed him. He shall be eligible for probation for the offense with which he is charged, and the judge of the court shall immediately place him on probation. In the event his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation. The court shall, however, give the defendant credit on his sentence for the time he spent in the center.

Goff "fully admit[ted] to his offense unlike his appearance at his Sentencing Hearing where he continued to deny his involvement and protest the evidence." An evidentiary hearing was held on November 19, 1997. Goff proffered the testimony of Dr. Allan Scott Muller, a clinical psychologist. Dr. Muller opined that confinement and treatment at the Anthony Center was appropriate.[9] By order filed December 2, 1997, the circuit court denied the motion for reconsideration. The following reasons were given by the court in denying the motion:

1. The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution.

2. The record in this matter establishes that there is a substantial risk that the defendant would commit another crime during any period of probation or conditional discharge.

3. Release, reduction, probation, or conditional discharge or suspension in placing the defendant at the Anthony Center

> Any male youth between the ages of ten and eighteen committed by the judge of any court of competent jurisdiction for any of the causes, and in the manner prescribed in article five, chapter forty-nine of this code, may, if such youth is or has attained the age of sixteen, be placed in a center or transferred from the industrial school or like facility to a center and back to such facility by the commissioner of public institutions, if he deems it proper for the youth's detention and rehabilitation.
>
> (Italics added)

9. Dr. Muller generated a report based, in part, upon two interviews with Goff. The report was introduced into evidence at the reconsideration hearing. In the report Dr. Muller indicated the following:

> I endorse the Anthony Center for youthful offenders as an appropriate placement for Mr. Goff, with the understanding that while at the program and/or upon release, he be ordered to seek treatment services from an appropriately credentialed provider. Hopefully, this would occur as a condition of probation/parole.
>
> Additionally, in order to protect the community and family members, it is recommended that when released from confinement:
>
> 1) Mr. Goff should refrain from all behaviors with his family and in the community which could be interpreted as or could lead to molestation. These include but are not limited to, wrestling, tickling, holding on his lap, bathing,

would unduly depreciate the seriousness of the defendant's crime.

4. The Court looking at the age of the victim and the defendant's refusal to admit his crime and show remorse during the trial, at sentencing, and only reversing his posture for purposes of the hearing for reconsideration leads the Court to believe that the original sentence imposed is appropriate.

Goff appeals the order denying his motion for reconsideration. In this appeal Goff alleges the following: (1) the circuit court's findings of fact were clearly erroneous, (2) the circuit abused its discretion in denying the motion, and (3) the sentence imposed was constitutionally impermissible.

## II.

## STANDARD OF REVIEW

■ Goff's motion for reconsideration was made pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure.[10] This

> dressing, putting to bed, attending to bathroom or hygiene functions, or taking photographs of children or adolescents.
>
> 2) Mr. Goff should not be allowed unsupervised contact with children of any age, of either gender or sexual orientation. Supervision should consist of eye contact whenever he is in physical proximity to a child or adolescent. The supervisor should be an adult.
>
> 3) Mr. Goff should not be in a position of authority over or have responsibility for children of any age or either gender. This includes, but is not limited to, work, recreational, or social settings.

10. Rule 35(b) provides:

> (b) Reduction of Sentence—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Court set out the standard of review for a trial court's decision on a Rule 35 motion in syllabus point 1 of *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996):

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a de novo review.

As a general matter, a Rule 35 motion is not reviewable by this Court absent an abuse of discretion. *Head,* 198 W.Va. at 301, 480 S.E.2d at 510. We crystallized this principle in syllabus point 4 of *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982), wherein we held "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *See* Syl. pt. 12, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996); Syl. pt. 9, *State v. Hays,* 185 W.Va. 664, 408 S.E.2d 614 (1991).

### III.

### DISCUSSION

#### A. *The Circuit Court's Findings of Fact*

The circuit court's order set out four specific findings, each of which Goff challenges. First, the circuit court determined that Goff needed correctional treatment most effectively provided by his commitment to a correctional institution. Goff argues that his placement at the Anthony Center is appropriate as he will not receive rehabilitative treatment while incarcerated in prison. Also, Goff asserts that upon release he will be "more prone to violence than he presently is" if he remains in the prison system. The State takes the position that

rehabilitative services are provided by the prison system to all inmates. This Court noted in syllabus point 2 of *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981), that "[i]nmates incarcerated in West Virginia State prisons have a right to rehabilitation established by W.Va.Code Secs. 62–13–1 and 62–13–4 [1997], and enforceable through the substantive due process mandate of article 3, section 10 of the West Virginia Constitution." Goff's argument is flawed. No evidence was presented to the trial court, (nor proffered to this Court), to demonstrate that rehabilitative services are not being provided to prison inmates. The State correctly argues that Goff failed to show that the Anthony Center offers some unique sexual oriented rehabilitative service not being offered by the prison system.[11] In fact, during the hearing on the reconsideration motion, Dr. Muller was unable to inform the court of any unique services that the Anthony Center would provide to Goff:

Q. I wanted to ask the doctor if he's aware of what services Anthony provides?

A. As far as I know that they do provide counseling, social skills, there's vocational training as well. All of these training and treatments play into what is needed for somebody who suffers—

Q. Have you talked with the Anthony Center specifically about what they might have that would be appropriate?

A. No, I have not.

The second finding made by the circuit court was that the record in the case established that there is a substantial risk that Goff would commit another crime during any period of probation or conditional discharge. Goff asserts there was no evidence suggesting he would commit another crime. However, Dr. Muller testified, in response to questioning by the circuit court, that if Goff "doesn't learn any other ways of dealing with what's going on inside of him and his unstable personality ... I think its [sic] just as likely that he will act out again." Dr. Mul-

---

**11.** The most troubling fact noted by the State is that: "The Anthony Center's population consists of boys as young as sixteen years of age. This becomes significant when considering that Dr. Muller reported that [Goff] possessed character-

istics of a pedophile. Dr. Muller also reported that [Goff] is subject to '[s]elf-defeating asocial actions ... which can include sexual and homosexual assault.' "

ler's report characterized Goff as "impulsive, unpredictable and nonconformist." Dr. Muller wrote that "[a]lthough [Goff] does not appear to be a fixated pedophile, he does have the obsessive fantasy and masturbation cycle which is often characteristic of the disorder." Dr. Muller opined when Goff is released from confinement, Goff should not be allowed unsupervised contact with children of any age or be in a position of authority over or have responsibility for children of any age.

■ The third finding made by the circuit court was that placing Goff at the Anthony Center would unduly depreciate the seriousness of Goff's crime. Goff's brief argues that this finding is erroneous because "[t]he facts of this case do not bear out overly tragic circumstances. This was one lick on an 11 year old boy's penis." The State counters that the "[d]efense completely ignores the fact that an eleven-year-old boy was forcefully subjected to an emotionally disturbing homosexual act." There can be little debate that sexual assault of a minor is profoundly tragic. "Children are the most vulnerable of victims, suffering traumatic and frequently life-long physical and emotional damage." [12] Commentators have suggested that an alarmingly large number of male children are victims of sexual assault. However, because of under-reporting, a true picture of this class of victims is not known.[13] Researchers have found that it is a "common clinical experience for boys to feel that because they responded [to the sexual assault], it must mean that whoever victimized them knew they would react and had therefore picked them out because of some 'sign' of homosexuality." [14] Moreover, "[s]exually abused boys experience sexual identity confusion and fears about homosexuality ..., as well as

fears that they may become child sexual abusers themselves." [15]

■ The fourth finding made by the circuit court was that the original sentence imposed was appropriate in view of the age of the victim, and Goff's refusal to admit his crime and show remorse during the trial and at sentencing. The order further observed that Goff again admitted his crime for the sole purpose of the reconsideration hearing. Goff challenges this finding with an argument that the trial court penalized him for refusing to give up his right against self-incrimination during the trial. Goff contends that this finding presents a due process violation under *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). *Bordenkircher* held that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" The State correctly points out that the sound principle announced in *Bordenkircher* is inapplicable to this case. *Bordenkircher* was concerned with prosecutorial misconduct by threatening a defendant with reindictment on a more serious charge should the defendant not plead guilty to the charge presented. Moreover, in syllabus point 2 of *State v. Finley*, 177 W.Va. 554, 355 S.E.2d 47 (1987), Justice McHugh clearly announced that "[a] sentencing judge, in evaluating a defendant's potential for rehabilitation and in determining the defendant's sentence, may consider the defendant's false testimony observed during the trial." In *United States v. Grayson*, 438 U.S. 41, 54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978), the court held that "[t]here is no protected right to commit perjury." *Grayson* also indicated that "[a] defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has

---

12. William Winslade, T. Howard Stone, Michele Smith–Bell & Denise M. Webb, *"Castrating Pedophiles Convicted of Sex Offenses Against Children: New Treatment or Old Punishment?"* 51 SMU L.Rev. 349, 351 (1998).

13. *Id.*, at 358.

14. Bill Watkins & Arnon Bentovim, *The Sexual Abuse of Male Children and Adolescents: A Review of Current Research*, 33 J. Child Psychol. & Psychiatry 197, 202 (1992).

15. Winslade, Stone, Smith–Bell & Webb, *supra* note 12, at 355 n. 20. The authors observed that "[s]ome differences between sexually abused boys and girls have been noted, the most apparent being that girls tend to exhibit sexually reactive behavior that may place them at further risk of sexual abuse, while boys have a greater tendency towards sexual aggression and engaging in coercive sexual behavior with other children[.]" *Id.*

been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *Id.*, 438 U.S. at 50, 98 S.Ct. at 2616.

Goff confessed to Trooper Forman that he sexually assaulted A.A. Goff then recanted his confession. Then, while under oath, Goff told the jury and court that he did not sexually assault A.A. During sentencing Goff again denied sexually assaulting A.A. Only after sentencing did Goff once again admit to sexually assaulting A.A. Goff now asks this Court to find erroneous the trial court's consideration of his pattern of deception and lies during the hearing for reconsideration of sentencing. We find no merit in Goff's first assignment of error.[16]

### B. *The Sentence Imposed*

■ Goff's final argument is that the sentence imposed was constitutionally impermissible. This Court held in syllabus point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), that "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" In syllabus point 5 of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), we indicated that

[p]unishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

Two tests are applied to determine whether a sentence is so disproportionate to a crime that it violates the State Constitution. Under the first test this Court must determine whether the sentence for the particular crime shocks the conscience of the Court and society. If a sentence is so offensive that it is found to shock the conscience, the inquiry need not further proceed. Such a sentence must be vacated. *See Cooper*, 172 W.Va. at 272, 304 S.E.2d at 857. However, when it cannot be said that a sentence shocks the conscience, the second test is triggered. The second test was established in syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

■ Goff contends that his sentence shocks the conscience. Among the allegations Goff offers to support his position, is that he and A.A. "had a chance meeting on a basketball court which resulted in the [defendant] pushing the victim on the ground and licking his penis once[.]" Goff noted that no weapon was used and no physical injury resulted.[17] Ultimately, Goff's rendition of the surrounding circumstances of his offense omits the fact that the psychological injuries sustained by A.A. are quite severe. Without hesitation, this Court concludes that the act of using a child to gratify one's perverse sexual appetite "shocks the conscience." Therefore, we conclude that the trial court's

---

16. Goff's second assignment of error is equally without merit. It essentially repeats previous contentions and argues that the circuit court failed to consider the rehabilitation goal of the criminal justice system. The initial finding by the trial court clearly recognized the goal of rehabilitation. The trial court's first finding stated without ambiguity that "[t]he defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution."

17. Additionally, Goff argued that he had no prior criminal record. He believes he is a good candidate for rehabilitation. He now has empathy for the victim. Goff also argues that the presentence report recommended that he be committed to the Anthony Center. Finally, Goff argues that if he had been five weeks younger, the matter would have been governed by the juvenile laws.

sentence for such a crime does not shock the conscience.

■ The second part of our analysis requires this Court to consider the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within our same jurisdiction. As to the nature of the offense, Goff argues that it "is serious and emotionally violent, though not physically violent." The State counters, correctly so, that this offense involved physical force on the part of Goff against a child of tender years. "This compounded by the fact that it involved a homosexual act." As to the legislative purpose, Goff contends that while the legislature intended to be tough on sexual offenders, a door for probation was left open, as well as treatment under the youth offender statute. The point missing in Goff's argument is that lesser punishment for sexual assault is not to be indiscriminately awarded. A defendant receiving probation or Anthony Center treatment for sexual assault in the first degree must, at a minimum, display honest remorse.

With respect to a comparison of the punishment with what would be inflicted in other jurisdictions, Goff has cited law from Pennsylvania, Maryland and Virginia. We are not persuaded by Goff's arguments. Goff concedes that all three jurisdictions have sexual offense statutes that distinguish sexual conduct, for punishment purposes, differently than West Virginia. All three jurisdictions provide optional statutes that have lesser charges and punishments. The State points to Nevada, Georgia, Utah and Washington as representative of jurisdictions with tough penalties for sexual assault like West Virginia. In the final analysis, the State is correct in noting that jurisdictions vary widely in their classification and punishment for the type of assault occurring in the instant case. West Virginia is not alone in the severity of its punishment. The final consideration requires comparison of the challenged sentence with the punishment for other offenses within the State. Goff, unconvincingly, has attempted to compare his punishment with the punishment for first degree murder. Goff notes that if a jury convicts a defendant for first degree murder with mercy, such a defendant is eligible for parole in 15 years. Nevertheless, Goff's punishment does not make him eligible for parole until after 15 years. The State points out that eligibility for parole and obtaining parole are different. That is, the murderer may not be released from prison. In contrast, Goff's sentence automatically terminates after 35 years. As such, we find that the sentence in this case does not violate the proportionality principle found in Article III, Section 5 of the State Constitution.

## IV.

## CONCLUSION

In view of the foregoing, we affirm the circuit court's sentencing order of 15 to 35 years in the penitentiary.

Affirmed.

WORKMAN, Justice, concurring:

(Filed Dec. 15, 1998)

I concur with the ultimate conclusion of the majority. The Appellant Goff was found guilty of sexual assault in the first degree and sentenced to 15 to 35 years of imprisonment. I agree with the majority's finding that this sentence was constitutionally permissible and not unduly harsh in light of the nature of Goff's crime. The purpose of my concurrence is to emphasize the need for rehabilitative treatment for sex offenders in the prison system in order to reduce recidivism rates among sex offenders. Researchers have found that recidivism rates for child sex offenders are alarmingly high.[1]

"The primary goal for managing sex offenders should be to protect society [especially children] from new sexual assaults ... [h]owever, a goal of protecting society requires the less popular task of providing assistance to offenders so they may learn

---

1. Jean Peters–Baker, *Challenging Traditional Notions of Managing Sex Offenders: Prognosis is* *Lifetime Management,* 66 UMKC L.Rev. 629, 646 (1998).

to manage their deviant behavior." [2]  Accordingly, one of the best methods for accomplishing the goal of protecting society includes providing treatment for the sex offender.[3]  Evidence suggests that "[c]orrectional facilities have not kept up with the increasing demand for sex offender treatment." [4]  Courts face a difficult challenge in situations as the one before us because researchers have found that "courts cannot yet rely on sexual offender treatment programs to reduce recidivism." [5]

Goff contends that he should be placed in the Anthony Center instead of imprisoned in a state penitentiary in order to receive the appropriate rehabilitative treatment.  However, as the majority found, Goff has not demonstrated to the Court that the Anthony Center provides any particular rehabilitative treatment that he cannot receive in the correctional institution in which he is incarcerated.  The defense failed to link Goff's specific rehabilitative needs to the programs offered at the Anthony Center.  Goff presented no evidence to demonstrate that rehabilitative services are not being provided to prison inmates.  Further, this Court is not in a position to provide specialized rehabilitation services to individual convicts.

Tragically, as Goff correctly asserted in his brief, he will enter the prison system at the young age of eighteen and, upon release, will be more "prone to violence than he presently is."  When Goff is released from prison, he will be very likely to offend again unless he receives proper rehabilitative counseling and treatment.  This Court explained in syllabus point two of *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981), that "[i]nmates incarcerated in West Virginia state prisons have a right to rehabilitation[.]"  The clinical psychologist who examined Goff found that he had the potential for rehabilitation and he clearly has a right to such rehabilitation.  Unfortunately, the reality is that Goff will *not* be rehabilitated in prison and most offenders who are incarcerated will be released back into society.

For this reason, it is imperative that our current prison system place greater emphasis on designing rehabilitative treatment programs, especially for sex offenders, so that there will be less likelihood that the offender will re-offend.

I am authorized to say that Justice McCUSKEY joins me in this concurrence.

## STARCHER, Justice, dissenting:
### (Filed Dec. 18, 1998)

In the instant case, the record shows that the defendant is a troubled young man who had a neglectful and abusive childhood.  He performed an impulsive criminal act that was deeply wrong.  But the record also indicates that he had never been in trouble with the law before.

Despite his troubled raising, the defendant had achieved some real success in overcoming his background.  He had completed his educational goals—and at age 17 he had fulfilled his dream of enlisting in the United States Army. He had just completed his basic training at the time of the instant offense.

I note—and I am disappointed—that the majority opinion does not mention key evidence and facts that are in the record of the instant case.

The majority opinion, for example, does not disclose that at the defendant's initial sentencing hearing, the pre-sentence evaluating psychologist, Harold Slaughter, Jr., M.S., recommended placement at the Anthony Center.

The majority also does not disclose that the court probation officer stated, with respect to the defendant's initial sentencing, that the probation office "does not believe that the defendant is a threat to the community, and the instant offense is viewed more as an isolated incident rather than a pattern of behavior exhibited by the defendant."

Moreover, citing the appellant's youthful age and "lack of an prior criminal record,"

2.  *Id.* at 667.

3.  *Id.*

4.  Peter Finn, *Do Sex Offender Treatment Programs Work?,* Judicature, March–April 1995, at 250.

5.  *Id.*

the probation office recommended that the defendant be sent to our penal system's diagnostic unit for "a complete psychological evaluation" and "if no substantial problems are uncovered ... that the subject be committed to the Anthony Correctional Center for not less than six months nor more than two years," followed with probation.

Additionally, at the defendant's sentencing reconsideration hearing, this professional consensus was joined by a second psychologist, Dr. Allan S. Muller. Dr. Mueller worked for 8 years in the Virginia penal system. He has extensive experience with sexual offenders. Dr. Mueller has recommended penitentiary incarceration for sex offenders many times—and on many occasions, for first offenders. (The prosecutor presented no witnesses or evidence at this reconsideration hearing.)

Dr. Mueller, based on nearly 8 hours of interviews with the defendant, and the results of 17 psychological tests, established the following: [1]

(a) the defendant suffers from borderline personality disorder (BPD) due to the learned violent behavior of his youth; a borderline personality disorder is "a protective way of interacting in the world;"

(b) although he has sexual fantasies and masturbates, the defendant does not have the fixed justifications and appetites of a pedophile. He is definitely not a pedophile and he is highly unlikely to harm another child; [2]

(c) the defendant is not an anti-social personality;

(d) the defendant is unlikely to commit a violent crime in the future if given the proper counseling and rehabilitative setting since he lacks a history of antisocial and violent behaviors; further, though "[t]he potential is always there for further impulsive actions

... [I]t's not likely ... that this would occur again—given his presentation he doesn't prefer young children and that's quite clear. There's no long history of that;"

(e) the defendant exhibits an exceptionally high empathy for the victim and this is "something that characteristically prevents somebody from reoffending;"

(f) the defendant is an exceptionally good candidate for incarceration at a youthful offender facility, with therapeutic counseling to address his problems, followed by supervised release if appropriate.

The circuit judge's decision in the sentence reconsideration proceeding was premised on the defendant's not having admitted any wrongdoing or shown any remorse. However, at the time of the reconsideration hearing, the defendant had in fact admitted his acts and was beginning to show remorse and shame.

Was the defendant admitting his offense to try to avoid a minimum of 15 years in prison? I expect so. But it was nevertheless a genuine admission, which is a helpful beginning to rehabilitation. And there was substantial expert evidence that the defendant's shame, remorse and awareness of the harm he had caused the victim was also genuine, even though it was expressed for the first time after the defendant was convicted.

Yes, the defendant had vociferously denied the facts of his crime at his trial and at his initial sentencing—although the defendant had initially confessed to a police officer.

The defendant claimed at trial that he had been frightened into confessing by the police officer. This claim was absurd, as the prosecution ably argued to the jury. Why would the defendant confess to something that would cause him to lose his military career, the one thing he cared about most?

---

1. Validity scales were employed in all 17 tests and the appellant was "forthright, open and honest" on all 17 tests, with the possible exception of the self-esteem measures which operate on "a kind of conscious level of belief." Dr. Mueller stated that the defendant's consistent honesty throughout his tests belied any thought that he was manipulating the tests to "create a good impression (as somebody would do) so that somebody can get let out of jail." Among other facts, Dr. Mueller's report documents that the appellant was raised by physically and sexually abusive alcoholic parents, as well as in several foster homes.

2. Dr. Mueller pointed out that he had a child of his own, and that he evaluated the likelihood of an offender's further sexual misconduct from the perspective of a protective parent.

Dr. Mueller explained that the defendant's denial of his offense was not only an attempt by the defendant to avoid accountability for his crime,[3] but also a part of the shell of bravado and positive self-image that the defendant had created over the years—to mask a bitter personal core of confusion, insecurity, low self-esteem, and pain—arising out of the defendant's troubled childhood.

Thus, I believe that the defendant's denial of responsibility at his trial and initial sentencing substantially contributed to the sentence imposed in this case.

I believe that the circuit judge did seek to use his best discretion in his sentencing decisions in the instant case. But I think that the circuit judge may have let the defendant's stupid bravado and denial obscure and preclude a full consideration of the evidence and recommendations that the probation officer and two psychologists put before the court.

Additionally, I must note that the majority opinion's suggestion that Anthony Center is not an appropriate placement for this young man, to me, seems to be based on misinformation. I have sent dozens of youthful offenders to Anthony Center, including people with the same problems as this defendant. Most have done very well there.

Moreover, contrary to what the majority opinion suggests, Anthony Center is in fact strictly limited to youthful adult offenders—no juveniles are housed there. This is based on a written departmental policy that is part of the record in the instant case. That record also shows that Anthony Center definitely provides offense-specific group and individual therapy for sex offenders. Thus, two key factual postulates of the majority opinion are simply wrong.

It appears to me that based on the record, one appropriate sentencing approach for this defendant would be as follows: (1) a 60–day stint at an adult diagnostic and classification penal facility, then return to jail for final sentencing; (2) imposition of a sentence of penitentiary imprisonment for a term of 15– 35 years; (3) if the diagnosis does not show serious problems not already disclosed about the defendant, suspension of the execution of the penitentiary sentence and commitment to Anthony Center, with required sexual offender counseling, for a 6–month to 2–year period, following by a return to the circuit court; and (4) if the term at the Anthony Center is not successfully completed, execution of the penitentiary sentence—or, if the Anthony Center term is completed successfully, then placement of the defendant on strict probation for the maximum of 5 years. Probation conditions should include: no drugs or alcohol; obtain and maintain employment; continued sexual offender counseling and treatment; restitution to the victim and victim's family; community service; and weekends in jail for a substantial period.

Based on the undisputed consensus of professional opinion in the record, and in light of the record as a whole, there is good reason to believe that this defendant, subject to conditions like the foregoing, can live as a productive citizen without reoffending. That is a pre-eminent goal of our justice system, when we have the conditions where it can be accomplished. In this case, it appears that we do. It's worth a try.

Finally, I completely understand and respect the feelings of the family of the child victim. I have children, too. At the appellant's sentencing, the child's mother wanted the strongest possible penalty. I understand and respect that feeling. The circuit court could send the defendant to Anthony Center; and then bring him back with a full record of his progress or lack thereof—and then see what the victim's family has to say. Hard feelings often moderate somewhat over time.

For the foregoing reasons, I respectfully dissent.

---

**3.** Dr. Mueller also noted that the defendant had reported already being beaten in jail for being a "baby-raper."