599 S.E.2d 736

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Bruce Edward HUTCHINSON, Defendant Below, Appellant.**

**No. 31409.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2004.

Decided March 8, 2004.

**316**

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Timothy P. Lupardus, Esq., Pineville, West Virginia, Attorney for Appellant.

Justice MCGRAW deeming himself disqualified did not participate in the decision of this case.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Wyoming County entered on September 26, 2002.

In that order, Bruce Edward Hutchinson (hereinafter "the appellant") was sentenced to life imprisonment with a recommendation of mercy for his conviction of first degree murder. In this appeal, the appellant contends that the circuit court erred by refusing to dismiss for cause three prospective jurors from the jury panel and by allowing the State to introduce testimony at trial in violation of Rule 404(b) of the West Virginia Rules of Evidence. The appellant also claims that there was insufficient evidence of premeditation to support a first degree murder conviction. Finally, the appellant asserts that his trial counsel was ineffective.

## I.

## FACTS

It is undisputed that during the evening of April 7, 2000, the appellant used a handgun to fatally shoot Jeff West in the chest at close range. The evidence at trial revealed that the appellant was agitated throughout the day, prior to the shooting believing his girlfriend of three years, Debbie Cline, was having an affair with his landlord, Henry Robinson. In fact, the appellant's frustrations led him to threaten to kill himself, Ms. Cline, and her alleged lover Mr. Robinson. According to Ms. Cline, the appellant made these threats "on and off all day." At one point, the appellant, who began drinking during the morning and continued drinking the entire day, went into the woods where he pretended that he had shot himself and again expressed to Ms. Cline, "I'm gonna kill you."

Later that same day, between 5:00 p.m. and 6:00 p.m., the appellant told a clerk at a nearby convenience store that anyone giving him a hard time would get hurt and that before the night was over someone was going to be harmed. Two clerks working at the store described his demeanor as angry and agitated. Moreover, one clerk stated that the appellant repeatedly patted the back of his pants while he made these threats. According to Ms. Cline, the appellant "kept [the gun] in the back of his pants most of the time."

Sometime after 10:00 p.m., Mr. West and his friend Randy Toler, both long-time friends of the appellant, were giving Adam Walker a ride to the appellant's home where Mr. Walker would be spending the night. When they arrived, Mr. Walker left the truck and went into the appellant's house. Mr. Toler and Mr. West stayed in their truck and began a conversation with Dee Henry and Ms. Cline.

The appellant then came out of the house with a pistol in his hand demanding to know Ms. Cline's whereabouts. Mr. West jokingly replied, "She's sitting in the truck with me and Randy." Mr. Toler testified that Mr. West had joked with the appellant in this manner on many occasions. Nonetheless, this time, the appellant responded, "She better not be ... I'll shoot every one of you[s]." Mr. Toler then stepped out of the truck and tried to calm the appellant. The appellant fired a shot in the air. Mr. Toler then said, "What are you doing shooting that damn gun around like that for?" The appellant replied, "I'll shoot you" to which Mr. West responded, "You won't shoot me." The appellant then aimed the gun at Mr. West's chest and pulled the trigger. After witnessing the shooting, Mr. Toler ran to the neighbor's house to call an ambulance and the police. Meanwhile, the appellant stood on his porch and yelled, "I told you I'd shoot you-ins."

Subsequently, the appellant was arrested and charged with first degree murder. On November 6, 2001, a jury returned a verdict of guilty with a recommendation of mercy. Thereafter, pursuant to the jury verdict, the appellant was sentenced to life imprisonment with mercy. This appeal followed.

## II.

### STANDARD OF REVIEW

The appellant has presented several assignments of error for our review. Initially, he contends that the circuit court committed error by failing to dismiss three potential jurors and by allowing evidence in violation of Rule 404(b). The appellant also claims that he was denied effective assistance of counsel and that there was insufficient evidence of premeditation to convict him of first degree murder. In Syllabus Point 1 of *State v. Paynter*, 206 W.Va. 521, 526 S.E.2d 43 (1999), we held, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We have further indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

As noted above, we are required to determine in this appeal whether the trial court committed error in refusing the appellant's motions to strike for cause a potential juror. The standard of review for this issue was articulated in *State v. Miller*, 197 W.Va. 588, 600–01, 476 S.E.2d 535, 547–48 (1996), wherein we held:

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

*See State v. Wade*, 200 W.Va. 637, 654, 490 S.E.2d 724, 741 (1997); Syllabus Point 2, *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987). In Syllabus Point 4 of *State v. Miller* we further held:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

197 W.Va. 588, 476 S.E.2d 535. *See* Syllabus Point 11, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998).

In addition, we are asked to determine if there was sufficient evidence to justify the appellant's conviction. This issue is governed by Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Accordingly, we proceed with our examination of the assigned errors with these standards in mind.

### III.

### DISCUSSION

The appellant raises four assignments of error in his appeal to this Court. We do not find merit in any of the assigned errors and proceed to discuss them below.

#### A. *Prospective Jurors Mullens, Jennings, and New*

■ The appellant maintains in his first assignment of error that he was denied a fair trial due to the failure of the circuit court to excuse three prospective jurors from the juror *voir dire* panel. Initially, the appellant argues the circuit court erred in denying his challenge for cause of prospective juror Jonathan Mullens. During *voir dire*, Mr. Mullens indicated that he was a fellow employee of potential witness Randy Toler and had worked with him for approximately seven months. As noted above, Mr. Toler was present during the murder of Mr. West. Consequently, the appellant requested that Mr. Mullens be removed from the jury panel for cause. However, his request was denied.

■ In this appeal, the appellant maintains that Mr. Mullens made an unambiguous statement that he could not be impartial due to his association with Mr. Toler. The appellant thus believes that Mr. Mullens should have been struck immediately and that any further questioning was an improper attempt to rehabilitate a prospective juror noting that "[o]nce a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." Syllabus Point 5, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002).

The State counters that mere friendship or a work relationship with a State's witness does not, per se, disqualify a potential juror from serving on a jury. The State further says that the circuit court was not attempting to rehabilitate Mr. Mullens as he did not make "a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias." *Id.* The State notes that Mr. Mullens' initial indication that he would be uncomfortable making a decision on the life of any person was an ambiguous statement and that the circuit court was entitled to probe further without violating *O'Dell*.

■ We note at the outset that although Mr. Mullins was not struck by the trial court for cause, the appellant exercised a peremptory challenge against him so that he was not on the jury that convicted the appellant. Nevertheless, W.Va.Code § 62-3-3 (1949) requires a panel of twenty jurors "free from exception." This Court has previously found "if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable." *State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 866 (1973). Thus, we have held:

> The language of W.Va.Code, 62-3-3 (1949), grants a defendant the specific right to reserve his or her peremptory challenges until an unbiased jury panel is assembled. Consequently, if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his perempto-

ry challenge to correct the trial court's error.

Syllabus Point 8, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995).

■ Moreover, in *State v. Sampson*, 200 W.Va. 53, 57, 488 S.E.2d 53, 57 (1997), citing *State v. Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94, we held:

The true test of whether a juror should be struck for cause is whether that juror can render a verdict based solely on the evidence. The trial court is afforded considerable discretion in this determination, and we will reverse the trial court's decision only if there has been an abuse of discretion.

Further, "[w]hen a defendant seeks the disqualification of a juror, the defendant bears the burden of 'rebut[ting] the presumption of a prospective juror's impartiality [.]" ' *State v. Phillips*, 194 W.Va. at 588, 461 S.E.2d at 94, quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961). In determining whether there has been an abuse of discretion, we must evaluate each case on its own facts. *Sampson*, 200 W.Va. at 57, 488 S.E.2d at 57, citing *State v. West*, 157 W.Va. at 219, 200 S.E.2d at 865.

■ First, we note this is a close question on this particular juror, and therefore not an easy one, but we cannot agree with the appellant's assertion that Mr. Mullens made "a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias" as we discussed thoroughly in *O'Dell*. In Syllabus Point 1 of *O'Dell*, we stated: " 'Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed.' Syllabus Point 5, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996)." In Syllabus Point 2 of *O'Dell*, we further noted that " 'Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse.' Syllabus Point 3, *State v.*

*Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978)." We also explained that "When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror." Syllabus Point 3, *O'Dell*. Finally, we resolved that "If a prospective juror makes an inconclusive or vague statement during *voir dire* reflecting or indicating the possibility of a disqualifying bias or prejudice, further probing into the facts and background related to such bias or prejudice is required." Syllabus Point 4, *O'Dell*.

Based upon these standards, we find that Mr. Mullens' initial statement that he may be uncomfortable "making a decision with another man's life" not to be a statement of clear bias or prejudice. It was simply a normal reaction to jury service. Indeed, most people are initially uncomfortable imposing judgment or penalties on individuals in a criminal matter where they potentially have the power to take away a person's freedom. Nonetheless, the question is not whether a juror is uncomfortable; rather, it is whether they can put these personal feelings aside, listen to the evidence and instructions on points of law, and make a fair decision. We find no error in the circuit court's denying the motion to strike Mr. Mullens on this ground.

■ Likewise, we are not persuaded that Mr. Mullens' work relationship with Mr. Toler alone automatically disqualified him from serving on the jury panel. This Court has long held that, "[t]he object of the law is, in all cases in which juries are impaneled to try the issue, to secure [persons] for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused [.]" Syllabus Point 1, in part, *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900). Having thoroughly reviewed the record, we believe that, on balance, Mr. Mullens' answers during *voir dire* do not raise any doubts that he would have been able to assess the evidence in an impartial manner. In fact, he stated categorically that he could

listen to Mr. Toler's testimony and weigh it just like every other witness. Thus, we find that the circuit court's failure to remove Mullens did not constitute reversible error.

▇▇▇▇ The appellant also asserts that the circuit court should have disqualified two additional prospective jurors, Jurors Jennings and New. The appellant admits that his trial counsel did not move to strike these prospective jurors.[1] Therefore, the appellant urges this Court to invoke the plain error doctrine. While the plain error doctrine has been utilized to correct errors of great magnitude even in the absence of an objection, we do not believe that the circumstances of this case warrant such a result. This Court explained the use of the plain error doctrine as follows in Syllabus Point 7 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995): "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." In pertinent part of Syllabus Point 4 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), this court stated that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

As previously set forth by this Court, " " '[t]he true test to be applied with regard to [the] qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had." Syllabus Point 1, *State v. Harshbarger*, ... [170 W.Va. 401, 294 S.E.2d

254 (1982)]' *quoting State v. Charlot*, 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974)." *State v. Finley*, 177 W.Va. 554, 555, 355 S.E.2d 47, 49 (1987). Moreover, in the *Finley* case we also stated that all that is required by a trial court when it determines that prospective jurors have been exposed to potentially prejudicial information is that the trial court "shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice." Syllabus Point 1, in part, *Finley*, 177 W.Va. at 555, 355 S.E.2d at 48. The record in this case reflects that both jurors stated that they could render a decision based solely on the law and evidence of the case. Moreover, in order to prevail on this assignment of error the appellant must convince us that the circuit court's failure to *sua sponte* strike these jurors was plain error.

Based on our thorough review of the record, we decline the appellant's invitation to apply the plain error doctrine because we cannot say that the trial court's failure to *sua sponte* strike the potential jurors was in fact "error" much less "plain error."

### B. W.Va. R. Evid. 404(b)

▇▇▇▇ Next, the appellant maintains that throughout the trial the State introduced testimony in violation of Rule 404(b)[2] of the West Virginia Rules of Evidence. In particular, the appellant claims that the circuit court should have excluded testimony that the appellant threatened to kill himself, his landlord, his girlfriend, made threats to convenience store clerks, and evidence that he carried a gun. However, having reviewed

---

**1.** In this appeal, the appellant asserts that Juror New should have been struck from the panel because she testified she was friends with the decedent. He claims that Juror Jennings should have been removed because he had been a former deputy sheriff and that such service with the sheriff's office would influence his judgment even though he stated unequivocally that this would not effect his judgment.

**2.** Rule 404(b) of the West Virginia Rules of Evidence provides:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

the record, we do not find that Rule 404(b) was applicable in this case.

We have heretofore drawn a distinction between intrinsic and extrinsic evidence. In Syllabus Point 1 of *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978), we held that "[o]ther criminal act evidence admissible as part of the *res gestae* or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." Moreover, in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), addressing a father's conviction for the murder of his infant son, we explained as follows:

> Evidence of the prior attacks and beatings not only demonstrated the motive and set-up of the crime but also was necessary to place the child's death in context and to complete the story of the charged crime. We hold that historical evidence of uncharged prior acts which is inextricably intertwined with the charged crime is admissible over a Rule 403 objection.

196 W.Va. at 313, 470 S.E.2d at 632. We further explained that:

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the *"res gestae" " " ").* (Citations omitted).

*LaRock,* 196 W.Va. at 312 n. 29, 470 S.E.2d at 631 n. 29.

We find that the evidence which the appellant challenges on this appeal was merely presented as context evidence illustrating why the appellant committed this murder. It portrayed to the jurors the complete story of the inextricably linked events of the day and amounted to intrinsic evidence. Given the facts of this case, the State had no obligation to provide notice of Rule 404(b) evidence, the appellant's counsel had no reason to object, and the circuit court had no reason to *sua sponte* exclude this evidence. Nevertheless, even if these alleged errors had been timely preserved by an objection at trial they remain without merit as the evidence presented was otherwise plainly admissible under our rules of evidence. For instance, the evidence that the appellant threatened to kill himself out of jealousy and rage was probative as to the appellant's malice, state of mind and motive while the fact that the appellant routinely was armed likewise constituted evidence of state of mind, premeditation, and habit in carrying a gun as well as evidence of opportunity and means to commit the murder. Moreover, the evidence of the appellant's statements made to convenience store clerks on the day of the murder were simply proper circumstantial evidence of his agitated and angry state of mind and were probative on the elements of intent and malice and were therefore admissible.

Our review of this matter does not indicate any abuse of discretion by the lower court, and we do not find that the lower court acted in an arbitrary or irrational manner. We consequently affirm on this ground.

### C. Insufficiency of Evidence

██ The appellant also maintains that there was insufficient evidence of premeditation and intent in order to justify a conviction of first degree murder. He says,

> The State's case was short on evidence of premeditation. The entire event lasted only a few seconds, during which time the decedent and Randy Toler made insulting comments toward the defendant. There was not ample time for deliberation and

premeditation of the sort that justifies a first degree murder conviction.

While the presence of premeditation is a question of fact reserved for the jury, we believe the facts of this case could lead any reasonable juror to justifiably find premeditation. Although the shooting itself may have occurred quickly, the record before this Court demonstrates that the incidents leading up to the appellant's conduct accumulated and escalated throughout the course of the day. *See State v. Dean,* 134 W.Va. 257, 267, 58 S.E.2d 860, 866, (1950) ("It was for the jury to say that the threats . . ., made in the presence of three witnesses, were in furtherance of her premeditation and deliberation to kill decedent."). Moreover, our well-established jurisprudence holds that:

Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

Syllabus Point 5, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Additionally, we explained in *Guthrie:*

In criminal cases where the State seeks a conviction of first degree murder based on premeditation and deliberation, a trial court should instruct the jury that murder in the first degree consists of an intentional, deliberate, and premeditated killing which means that the killing is done after a period of time for a prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as the minds and temperaments of people differ and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intended, is sufficient to support a conviction for first degree murder. To the extent that *State v. Schrader,* 172 W.Va. 1, 302 S.E.2d 70, (1982), is inconsistent with our holding today, it is expressly overruled.

Syllabus Point 6, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

We continued in *Guthrie* to say that:

This means there must be an opportunity for some reflection on the intention to kill after it is formed. The accused must kill purposely after contemplating the intent to kill. Although an elaborate plan or scheme to take life is not required, our *Schrader's* notion of instantaneous premeditation and momentary deliberation is not satisfactory for proof of first degree murder. . . . To speak of premeditation and deliberation which are instantaneous, or which take no appreciable time, is a contradiction in terms. It deprives the statutory requirement of all meaning and destroys the statutory distinction between first and second degree murder.

194 W.Va. at 657, 461 S.E.2d at 181.

The evidence in this case indicated that a heated discussion occurred between the appellant, Mr. Toler and Mr. West regarding the whereabouts of Ms. Cline. As Mr. West declared that Ms. Cline was in the truck with him and Randy, the appellant responded, "She better not be . . . I'll shoot every one of you[s]." At this point the appellant did not shoot anyone in an uncontrollable fit of rage. Instead, Mr. Toler stepped out of the vehicle and attempted to calm the appellant. After some time had passed, the appellant fired a shot in the air from his pistol. Even at this point, the appellant did not shoot Mr. West. Instead, more time passed as Mr. Toler asked the appellant why he was "shooting that damn gun around like that for." The appellant responded by telling Mr. West that he was going to shoot him. When Mr. West responded "you won't shoot me," the appellant aimed the gun at Mr. West's chest and pulled the trigger. As Mr. Toler ran to the neighbor's house to call an ambulance and the police the appellant stood on his porch and yelled, "I told you I'd shoot you-ins." In light of the facts of this case, we find that there was abundant evidence to sustain the appellant's conviction under the sufficiency of the evidence test contained in Syllabus Point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

#### D. Ineffective Assistance of Counsel

 Finally, the appellant argues that his trial counsel was ineffective. He provides a lengthy list of alleged ineffective assistance of counsel omissions including the failure to move to strike witnesses, failure to object to leading questions or to raise foundation objections to "many, many parts of testimony," failure to request a limiting instruction, failure to cross-examine witnesses correctly and failure to raise the issue of Rule 404(b) during a pre-trial hearing to test the admissibility of such evidence. Such assertions, however, are made without citations to the record or legal authority, are conclusory, and not supported by the record.[3]

 Generally, we have said that an appellant's claim of ineffective assistance of counsel is generally not ripe for direct appellate review. *State v. Miller*, 194 W.Va. 3, 12, 459 S.E.2d 114, 125 (1995). Effective assistance of counsel requires a reasonable standard of professional competence. *See* Syllabus Point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

In this case, the State contends and we agree, that it is impossible to discern from the record that which motivated trial counsel to act as they did. Indeed,

> intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior.... The

very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls for his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

*Id.* at 12–13, 459 S.E.2d at 125–26 (footnote omitted).[4]

 Moreover, we held in Syllabus Point 10 of *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992);

> It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

In any event, this Court cannot intelligently evaluate the appellant's ineffective assistance of counsel claim, as an adequate record has not been developed reflecting trial counsel's possible explanation of their actions and strategy below. *Miller*, 194 W.Va. at 15, 459 S.E.2d at 128. Should the appellant wish to pursue his ineffective assistance claim, he is not foreclosed from more properly developing it in a post-conviction collateral attack. *See Miller* at Syllabus Points 5 and 6 (outlining how ineffective assistance of counsel claims should be reviewed).

---

**3.** *See State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ( "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

**4.** We do point out though that having found that Rule 404(b) was not implicated in this case, we have some difficulty with the appellant's argument that his trial counsel was ineffective in failing to object to admissible evidence. *See e.g., Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994)("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

## IV.

## CONCLUSION

For the reasons stated above, we affirm the appellant's conviction.

Affirmed.