# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Jason C. Anderson,
Petitioner Below, Petitioner

**FILED**

**June 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 17-0568 (Marion County15-C-215)

Karen Pszczolkowski, Warden,
Northern Correctional Center,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Jason C. Anderson, by counsel Jason Wingfield, appeals the June 7, 2017, order of the Circuit Court of Marion County that denied his petition for post-conviction habeas corpus relief. Respondent Karen Pszczolkowski, Warden, Northern Correctional Center, by counsel, Robert L. Hogan, filed a response in support of the habeas court's order. On appeal, petitioner argues that the habeas court abused its discretion in failing to find (1) that certain evidence entered at trial was evidence of "bad acts" under Rule 404(b) of the West Virginia Rules of Evidence, and (2) that the trial court denied petitioner's constitutional rights by refusing to employ the requisite protections for the admission of the Rule 404(b) evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 23, 2007, 9-1-1 dispatched emergency medical personnel to petitioner and his girlfriend's residence for a medical crisis involving the couple's twelve-week-old infant. On arrival, the emergency personnel found a severely malnourished infant, who appeared to be deceased, on a urine soaked mattress. The infant had lesions on his body, a rotting finger, severe diaper rash, and injuries indicating he had been struck with a heavy object. The emergency personnel took the infant to the hospital in an ambulance; however, neither petitioner nor his girlfriend, Jennifer Meacham, asked to ride with the infant, nor did they go to the hospital. At the hospital, the infant was pronounced dead.

> In October 1, 2007, a grand jury indicted petitioner for
> murder of a child by a parent, guardian, or custodian by maliciously and intentionally and/or by knowingly allowing another person to maliciously and intentionally cause the death of a child under his or her care, custody or control by failing or refusing to supply such child with necessary food, clothing, shelter, or medical care . . . in violation of West Virginia Code § 61-8D-2(a) and -2(b).

1

The trial court appointed Harry Montoro and Katica Rible as petitioner's counsel.[1]

Petitioner's four-day trial commenced on April 7, 2010. Dr. Zia Sabel, Deputy Chief Medical Examiner for the State of West Virginia, testified that the cause of the infant's death was severe caretaker maltreatment-negligence. The State also called Ms. Meacham[2] who, according to the facts set forth in petitioner's appeal of his underlying conviction, testified that

> [petitioner] was extremely controlling of her, that he had been abusive towards her, that he would not let her go anywhere unless he accompanied her, and that he became upset when he learned that she was pregnant and accused her of cheating on him. After their baby was born, the [petitioner] disavowed being the baby's biological father and told her that the baby was not his responsibility. [Petitioner] also ordered his grandfather, Denzil Anderson, to take care of the baby notwithstanding that Mr. Anderson was elderly, legally blind and in poor health. Afterwards, [petitioner] placed the baby's crib in Mr. Anderson's bedroom.

> Ms. Meacham admitted that the baby's hygiene was not properly maintained, and that the baby would sometimes be left in the same diaper for days at a time. She related that [petitioner] would not permit her to change the baby's diaper, and when she did try to care for the baby, [petitioner] would "grab [her] by [her] arm and throw [her] back on the bed and tell [her], no, you're not going." Ms. Meacham admitted that both she and [petitioner] knew that the baby was covered with urine and feces, and that the foam pad in his crib was soaked with urine.

> Ms. Meacham also admitted that she and [petitioner] did not properly feed the baby and that there were occasions when they did not feed him for two or three days at a time. Ms. Meacham did offer, however, that occasionally [petitioner] would prop a bottle on a blanket so the baby could feed himself.

> Ms. Meacham testified that she wanted to take the baby to a doctor, but that [petitioner] refused and that she was afraid to disobey him because of his abusive behavior. One example of [petitioner's] abusive behavior was that when the baby would cry, [petitioner] would become angry, that "[h]e would shake the crib so hard that it would scare [the baby] and make him scream louder. Or he would hit him." When asked to describe how he hit the baby, Ms. Meacham stated "[s]ometimes fist, sometimes open hand."

---

[1] The trial court appointed other counsel who withdrew. Ultimately, Mr. Montoro and Ms. Rible represented petitioner at trial.

[2] Prior to petitioner's trial, Ms. Meacham entered a guilty plea to child neglect resulting in death for which she was sentenced to three to fifteen years in prison.

When asked about the [Child Protective Services'] visits, Ms. Meacham testified that both she and [petitioner] tried to either avoid the [Child Protective Services'] workers or would wrap the baby in a blanket to prevent the [Child Protective Services'] workers from seeing the condition of his skin. None of the [Child Protective Services'] investigators who saw the baby ever requested that the blanket be removed so they could examine him.

On the date of the baby's death, Ms. Meacham testified that [petitioner's] adoptive father woke her and told her that the baby felt cold to the touch. When she checked the baby, Ms. Meacham believed that the baby was dead. When she told [petitioner] and said they should call [9-1-1], [petitioner] refused, saying that instead they first needed to clean the house. As part of this house cleaning, Ms. Meacham and [petitioner] put toys around the baby's crib and, after cleaning the house for three or four hours, called [9-1-1]. While waiting for emergency responders, [petitioner] instructed Ms. Meacham to tell the authorities that they had fed the baby around 2:30 a.m. that morning, changed his diaper, and that the baby was fine at that time.

*State v. Anderson*, 228 W.Va. 58, 62-63, 717 S.E.2d 245, 249-50 (2011).

On April 12, 2010, the jury found petitioner guilty of the crime charged and did not recommend mercy. Thereafter, the trial court sentenced petitioner to life in prison without the possibility of parole. This Court affirmed petitioner's conviction. *See id.*

In 2015, petitioner filed a pro se habeas petition. The habeas court appointed counsel, who filed an amended habeas petition on December 10, 2015. In his *Losh*[3] list, petitioner alleged (1) his language barrier prevented him from understanding the proceedings; (2) the State knowingly used perjured testimony; (3) ineffective assistance of counsel; and (4) insufficiency of the evidence.

At a September 14, 2016, omnibus evidentiary hearing, the habeas court heard testimony from petitioner; his trial counsel, Harry Montoro and Katica Ribel; and Judge Patrick N. Wilson, who – at the time of petitioner's trial – was the Marion County prosecuting attorney who tried petitioner's case. Judge Wilson testified that he used Ms. Meacham's testimony as evidence of petitioner's contribution to the infant's death. Judge Wilson further testified that Ms. Meacham's testimony was inherent to the elements of the crime; consequently, he did not file a motion to use Rule 404(b) evidence with regard to Ms. Meacham's testimony.

By order dated June 7, 2017, the habeas court rejected petitioner's claims, including his claim of ineffective assistance of trial counsel. Petitioner now appeals.

As we have held,

---

[3] *See Losh v. McKenzie*, 166 W.Va. 762, 764, 277 S.E.2d 606, 608 (1981).

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). We have also held that to succeed on a claim of ineffective assistance of counsel in a habeas action, the petitioner must establish that (1) his trial counsel's "performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim. *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 321, 465 S.E.2d 416, 423 (1995)." *State ex rel. Vernatter v. Warden*, *W. Va. Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999).

Petitioner raises two assignments of error on appeal both of which address his claim of ineffective assistance of trial counsel. Petitioner first argues that the habeas court abused its discretion and clearly erred when it failed to recognize that Rule 404(b) of the West Virginia Rules of Evidence prohibited Ms. Meacham's testimony regarding petitioner's alleged prior bad acts and other crimes. Specifically, petitioner avers that the trial court failed to comply with its Rule 404(b) duties as set forth in Syllabus Point 3 of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996)[4]; and Syllabus Points 1 and 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[5]

---

[4] With regard to evidence deemed to be Rule 404(b) evidence, Syllabus Point 3 of the *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), requires a trial court to determine whether the State offers the evidence for a proper purpose and if the evidence is relevant. The trial court must also make an "on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice." Finally, the trial court must give a limiting instruction regarding the evidence.

[5] In Syllabus Points 1 and 2 of *State v. McGinnis*, 193 W.Va. 147, 151, 455 S.E.2d 516, 520 (1994), we held that:

1. When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

We first note that although petitioner couches this assignment of error as a claim of ineffective assistance of counsel, in essence, he argues that the trial court erred in allowing the admission of Ms. Meacham's alleged Rule 404(b) testimony at trial.[6] "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 3, *Hatcher v. McBride*, 221 W.Va. 5, 650 S.E.2d 104 (2006) (citation omitted). However, even if we assume that petitioner properly raises this issue as one of ineffective assistance of counsel, we concur with the habeas court's finding that

> there was no inadmissible 404(b) evidence presented at trial. The testimony concerning [petitioner's] violence towards Ms. Meacham was not used as evidence of [petitioner's] character or character trait, but rather used by the State to prove that [petitioner] caused Ms. Meacham to be incapable of caring for the infant decedent, directly contributing to the death of the child. Therefore, . . . [petitioner's] trial counsel did not err by failing to object to this evidence on Rule 404(b) grounds.

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with his character." However, evidence related to such acts is admissible where that evidence is intrinsic to the crimes charged. *See State v. Harris*, 230 W.Va. 717, 742 S.E.2d 133 (2013). "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. Harris*,

---

2. Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

[6] In his direct appeal to this Court, petitioner did not argue that the trial court erred in allowing the admission of Ms. Meacham's alleged Rule 404(b) testimony at trial.

230 W.Va. 717, 721, 742 S.E.2d 133, 137 (2013) (citing *State v. LaRock*, 196 W.Va. at 312 n.29, 470 S.E.2d at 631 n.29 (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990)).

Here, Ms. Meacham's testimony regarding petitioner's behavior toward her and the infant was properly admitted because that evidence was necessary for a full presentation of the case and essential to proving that petitioner intentionally failed to care for the infant and would not allow Ms. Meacham to care for the infant. Accordingly, Ms. Meacham's testimony was not Rule 404(b) evidence, but both direct and intrinsic evidence of the crime charge against petitioner, i.e., the "murder of a child by a parent, guardian, or custodian by maliciously and intentionally and/or knowingly allowing any other person to maliciously and intentionally cause the death of a child under his care, custody or control by failing to supply such child with necessary food, clothing, shelter or medical care . . . thus causing the death of said child[.]" Consequently, we reject petitioner's ineffective assistance of counsel claim with regard to the admission of Ms. Meacham's testimony.

In petitioner's second assignment of error, he argues that the habeas court abused its discretion in failing to find that the trial court erred by refusing to employ the requisite protections for Rule 404(b) evidence and, thereby, denied his right to procedural due process as guaranteed by the Fifth Amendment to the United States Constitution and his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.

As we noted above, Ms. Meacham's testimony was not Rule 404(b) evidence; thus, it was not subject to any of the procedural protections required for Rule 404(b) evidence. Accordingly, we find that the admission of Ms. Meacham's testimony was not a denial of petitioner's procedural due process rights under the Fifth Amendment.

As for petitioner's Sixth Amendment claim, he argues that his trial counsel's performance was deficient under an objective standard of reasonableness because trial counsel failed to fully litigate or to object to Ms. Meacham's Rule 404(b) testimony. Petitioner avers that this failure amounted to a denial of his right to counsel. Petitioner also argues that he was prejudiced by trial counsel's ineffective assistance because, absent Ms. Meacham's testimony, the State could not have proved malice and, therefore, could not have convicted him. Accordingly, petitioner asserts that, but for trial counsel's objectively deficient performance, the result at trial would have been different.

Our review of defense counsel's performance is "highly deferential" and begins with the strong presumption that "counsel's performance was reasonable and adequate." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Moreover, there is a wide range of performance that qualifies as constitutionally sufficient:

A defendant seeking to rebut this strong presumption of [defense counsel's] effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.

6

> We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts . . . were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Id.* at 17, 459 S.E.2d at 128. "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Legursky*, 195 W.Va. at 328, 465 S.E.2d at 430 (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995), quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir.1983)).

As for the first or "objectively unreasonable" prong of *Strickland/Miller*, it is satisfied only if the error is "so serious that [the defense attorney] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Here, because Ms. Meacham's testimony was direct evidence and/or intrinsic to the crime charged, trial counsel's performance was not deficient for failing to object to it. *See State v. Hutchinson*, 215 W.Va. 313, 321, 599 S.E.2d 736, 744 (2004) (context evidence illustrating why defendant committed murder is intrinsic evidence; thus, State had no obligation to provide notice of Rule 404(b) evidence and defense counsel had no reason to object). Moreover, even if the evidence had been Rule 404(b) evidence, counsel's decision not to object to the evidence would have fallen within the realm of sound trial tactics or strategy. *See Buchanan v. United States*, 2011 WL 4832565, at *5 (D.S.D. Oct. 12, 2011) (defense counsel opted not to object to Rule 404(b) evidence to avoid undue attention to evidence of preparation, planning, or intent). Therefore, counsel's failure to object to Ms. Meacham's testimony was not objectively unreasonable and was not so serious that petitioner's Sixth Amendment rights were denied.

With regard to the second prong of *Strickland/Miller*, it is satisfied only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5. Here, even if the trial court had excluded Ms. Meacham's testimony, the jury could have convicted petitioner given the overwhelming evidence of his guilt. That copious evidence showed that, throughout the course of his infant's brief life, petitioner intentionally and maliciously failed to provide food, shelter, and clothing to him and that this failure resulted in the infant's death. Thus, petitioner cannot satisfy the second prong of *Strickland/Miller*. Consequently, because petitioner satisfies neither prong of *Strickland/Miller*, we reject his claim that he was denied his Sixth Amendment right to the assistance of counsel.

Accordingly, for the foregoing reasons, we affirm the habeas court's June 7, 2017, order denying relief.

Affirmed.

**ISSUED:** June 8, 2018

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum